IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Pension Benefit Guaranty Corporation,            Case No. 3:15 CV 1421

                              Plaintiff,         MEMORANDUM OPINION
                                                 AND ORDER
              -vs-
                                                 JUDGE JACK ZOUHARY
Findlay Industries, et al.,

                              Defendants.


### INTRODUCTION

Defendant Findlay Industries, Inc. (Findlay) established a pension plan (Plan) in June 1964 (Doc. 3 at ¶ 26). Findlay remained the sponsor and administrator of the Plan from its inception until its termination effective July 2009 (*id.* at ¶¶ 28–29). Plaintiff Pension Benefit Guaranty Corporation (Pension Benefit) claims several Defendants are jointly and severally liable for the termination liabilities incurred by Findlay (*id.* at 2–3). Pension Benefit brings this action against Defendants under Title IV of the Employee Retirement Income Security Act of 1974 (ERISA), *as amended*, 29 U.S.C. §§ 1301-1461, and the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.* (*id.* at 2).

Findlay and certain other Defendants have been dismissed (Minute Entry 11/22/16); the remaining Defendants move to dismiss selective claims. Pending are two Motions to Dismiss under Federal Civil Rule 12(b)(6). Defendant The Philip D. Gardner Inter Vivos Trust Agreement Dated January 20, 1987 (Trust 1987) moves to dismiss Counts III and IX of the First Amended Complaint

(Docs. 21, 37, 48).  Defendants September Ends Co. (September Ends) and Back in Black Co. (Back in Black) move to dismiss Count XV (Docs. 22, 38, 43).

## STANDARD OF REVIEW

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted.  Federal Civil Rule 12(b)(6).  At this stage, this Court must accept all well-pled factual allegations as true and construe the Complaint in the light most favorable to Pension Benefit. *Haviland v. Metro. Life Ins. Co.*, 730 F.3d 563, 566–67 (6th Cir. 2013).  Although the Complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, the Complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

### Counts III and IX

Trust 1987 moves to dismiss Counts III (Controlled Group Liability of PDG Trust 1987 under 29 U.S.C. §§ 1306, 1307, 1362) and IX (Fraudulent Transfers by HG3 under 28 U.S.C. §§ 3304, 3306, 3307) for failure to state a claim.  The Estate of Michael Gardner also moves to dismiss those Counts (Docs. 33, 46–47).

2

Philip D. Gardner (Gardner) founded and owned Findlay until his death.  In January 1987, Gardner established Trust 1987 (Doc. 21 at 4; Doc. 21-1 at 1).[1]  Gardner donated two parcels of property to the trust (Doc. 21-1 at 1, Ex. A).  The trustee was directed to "hold, manage and control the property comprising the Trust estate, collect the income therefrom, and . . . disburse the net income and distribute the corpus thereof" to provide for the "care, support, maintenance, and welfare" of Gardner's sisters (Doc. 21-1 at 1).  Later, the funds were also to be used for the sisters' funeral expenses as the trustee saw fit (*id.* at 3).  After the passing of the last sister, the balance of the trust was to be split between Gardner's two sons, Defendants Philip J. Gardner and Michael J. Gardner (Gardner sons) (*id.*).  The Gardner sons served successively as trustees (Doc. 21-1 at 1, 4; Doc. 3 at ¶ 3).  The trust was irrevocable (Doc. 21-1 at 8).  Under the terms of the trust, the remaining real property, personal property and cash were transferred to the Gardner sons in 2014, following the death of the last sister (Doc. 3 at ¶¶ 138–40).

In Count III, Pension Benefit alleges Trust 1987 was "leasing a parcel of real property to [Findlay] from no later than July 1, 1993, through at least November 2009" (Doc. 3 at ¶ 64).  Pension Benefit goes on to allege this lease "had a substantial economic nexus with [Findlay], such that including [Trust 1987] in [Findlay]'s controlled group would further the purpose of the controlled

---

[1]

While a court may not normally consider matters outside the pleadings without converting a motion to dismiss to a motion for summary judgment, "a court may consider . . . exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein without converting the motion . . . ."  *Rondigo, LLC v. Twp. of Richmond,* 641 F.3d 673, 681 (6th Cir. 2011).  Here, Pension Benefit refers to Trust 1987, as well as its purpose and structure, in the First Amended Complaint (Doc. 3 at ¶¶ 59–64).  The trust itself is central to Pension Benefit's claims.  Accordingly, this Court will consider the trust documents in evaluating the motion to dismiss, without converting the motion to one for summary judgment.  *See Rondigo*, 641 F.3d at 681.

3

group rules, preventing employers from limiting their responsibilities by fractionalizing into separate entities" (*id.* at ¶ 65; Doc. 37 at 11).

Under ERISA, when "a single-employer plan is terminated . . . by [Pension Benefit] . . . any person who is, on the termination date, a contributing sponsor of the plan or a member of such a contributing sponsor's controlled group shall incur liability . . . ." 29 U.S.C. § 1362(a). For single-employer plans, a controlled group consists of all persons under common control, including "two or more trades or businesses under common control." 29 C.F.R. § 4001.3(b)(1). The phrase "trades or businesses" is not defined by ERISA or the relevant regulations.

According to Pension Benefit, the "categorical rule is that leasing property to a plan sponsor who is under the common control of the property owner constitutes a 'trade or business'" for ERISA purposes (Doc. 37 at 11). Pension Benefit therefore concludes Trust 1987 is in Findlay's controlled group, making Trust 1987 jointly and severally liable for termination liabilities (*id.*; Doc. 3 at ¶¶ 66 & 68). Trust 1987 disputes both the "economic nexus" test referenced in the Complaint and the "categorical rule," instead relying on the test identified in *Commissioner v. Groetzinger*, 480 U.S. 23, 35 (1987). In *Groetzinger*, the Supreme Court held that to constitute a trade or business for tax purposes, a person must engage in an activity (1) for the primary purpose of income or profit, and (2) with continuity and regularity. *Id.* Under this standard, Trust 1987 argues Pension Benefit fails to plead facts necessary to establish the trust was a trade or business, and thus, Trust 1987 cannot be held liable for termination liabilities under ERISA (Doc. 21 at 7).

Neither the Supreme Court nor the Sixth Circuit has defined the term "trade or business" in the specific context of ERISA termination liability. Therefore, this Court "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language

4

accurately expresses the legislative purpose." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009).  Merriam-Webster Dictionary defines "trade" as "the business or work in which one engages regularly" and "business" as "a usually commercial or mercantile activity engaged in as a means of livelihood."  The Supreme Court's *Groetzinger* test embodies this ordinary, common-sense meaning of the words at issue.  *Groetzinger*, 480 U.S. at 35.

Here, Gardner created Trust 1987 with the express purpose of providing for the care and eventual funeral expenses of his sisters (Doc. 21-1 at 1).  In July 1993, six years after the trust's inception, the trust began leasing one of its parcels to Findlay (Doc. 3 at ¶ 64).  The trust continued to lease the parcel to Findlay until November 2009 (*id.*).  Thus, the trust operated according to its purpose, leasing part of its real property to generate money for the care of Gardner's sisters during their lifetimes.  Thereafter, the balance of the trust was split between the Gardner sons as an inheritance (*id.* at ¶¶ 138–40).  Nothing in these facts suggests the leasing activity rose to the level of a "trade or business" under the plain meaning of the phrase or under the *Groetzinger* test.

Pension Benefit would have this Court adopt an approach utilized by other Circuits, which recognize a "categorical rule" that leasing property to a withdrawing employer constitutes a trade or business.  *See, e.g.*, *Cent. States Se. and Sw. Areas Pension Fund v. Messina Prods., LLC*, 706 F.3d 874, 881 (7th Cir. 2013); *Bd. of Trs. of W. Conference of Teamsters Pension Trust Fund v. Lafrenz*, 837 F.2d 892, 894 (9th Cir. 1988).  This Court, however, declines to adopt the categorical rule in this case.  The Circuits that have developed and applied the categorical rule did so in the context of the Multiemployer Pension Plan Amendments Act (MPPAA), which seeks to prevent employers from avoiding liability by fractionalizing into separate entities.  *See, e.g., Messina Prods.*, 706 F.3d at 881–83 (contrasting *Messina* and other cases).  As an initial matter, it is not clear that a single-

5

employer plan is governed by case law developed in the context of the MPPAA, which is a separate statutory scheme with its own legislative history and purpose.  Moreover, in this case, although Trust 1987 rented property to Findlay (the withdrawing employer), the purpose of the rental activity was not to dissipate Findlay's assets or to profit Gardner.  This is evident from the timing, form, and scope of the trust, which was personal not commercial.  Where, as here, there is no possibility the rental activity was used to dissipate or fractionalize the employer's assets, there can be no controlled group liability.  *See id.*, citing *Central States v. White*, 258 F.3d 636, 644 (7th Cir. 2001).

Pension Benefit maintains the allegations in the First Amended Complaint are sufficient, and it declines to amend to plead facts establishing Trust 1987 was a "trade or business" under *Groetzinger*.  Accordingly, Count III, and Count IX which the parties agree cannot survive the dismissal of Count III, are dismissed with prejudice.

### Count XV

Defendants September Ends and Back in Black move to dismiss Count XV of the First Amended Complaint for failure to state a claim under Federal Civil Rule 12(b)(6).

In December 2012, Pension Benefit and Findlay agreed to terminate the Plan effective July 2009 (Doc. 3 at ¶ 29).  In May 2009, F I Asset Acquisition LLC (FIAA) purchased Findlay's equipment, inventory, and receivables associated with the Springfield and Molded Products plants (*id.* at ¶ 208).  FIAA then transferred these purchases to Michael Gardner and his wholly-owned corporation Milstein, Jaffe & Goldman Inc. (*id.* at ¶ 209), which in turn transferred the assets to September Ends and Back in Black (*id.*).  September Ends now operates the Springfield plant, and Back in Black operates the Molded Products plant (*id.* at ¶ 210).

6

Pension Benefit advances a claim of successor liability under federal common law against September Ends and Back in Black (*id.* at ¶ 211), alleging both are subject to the termination liabilities because:  (1) they had notice of Findlay's termination liabilities; (2) Findlay was unable to pay the termination liabilities; and (3) there was "substantial continuity of operations" between Findlay and these two companies (*id.*).

September Ends and Back in Black argue that as asset purchasers they do not fall within the limited types of companies for which ERISA provides successor liability (Doc. 22 at 3).  Under the relevant ERISA statutes, those who may be liable include the contributing sponsor, the plan administrator, and members of the contributing sponsor's controlled group. 29 U.S.C. §§ 1362(a) & 1307(e).  September Ends and Back in Black fit none of these categories.

Congress empowered trustees to seek contributions to underfunded single-employer pension plans from a limited group of additional entities in the event of corporate reorganization.  For example, if a reorganization results in a "mere change in identity, form, or place of organization," Pension Benefit may pursue the successor corporation.  29 U.S.C. § 1369(b)(1).  Likewise, Pension Benefit may pursue a parent company when that company liquidates its subsidiary.  *Id.* § 1369(b)(2). Finally, Pension Benefit may pursue the successor corporation that results from a merger, consolidation, or division.  *Id.* § 1369(b)(3).  It is undisputed that September Ends and Back in Black, as asset purchasers, do not fit these categories either.

With no statutory support, this leaves Pension Benefit to ask this Court to apply a federal common law doctrine of successor liability to this case (Doc. 38 at 14), citing *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1327 (7th Cir. 1990), and other cases.

7

"[W]here Congress has established an extensive regulatory network and has expressly announced its intention to occupy the field, courts do not lightly create additional rights under the rubric of federal common law." *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 511 (6th Cir. 2014). This Court's authority to create federal common law with respect to ERISA "is restricted to instances in which (1) ERISA is silent or ambiguous; (2) there is an awkward gap in the statutory scheme; or (3) federal common law is essential to the promotion of fundamental ERISA policies." *Id.* Analyzing 29 U.S.C. §§ 1307(e), 1362(a), and 1369 under this standard, this Court concludes the creation of federal common law would be inappropriate here.

ERISA is neither silent nor ambiguous in terms of who may be pursued for termination liabilities. Rather, the Supreme Court recognizes ERISA as a "comprehensive and reticulated statute" based upon detailed findings made by Congress. *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361–62 (1980). The statutory provisions at issue here clearly identify who may be pursued for monetary recovery: namely, the plan administrator, the contributing sponsor along with members of the sponsor's controlled group, as well as successor corporations which are essentially alter egos of their original corporations. 29 U.S.C. §§ 1362(a), 1307(e), & 1369(b). Nowhere in these provisions did Congress suggest, let alone endorse, successor liability for asset purchasers, leading this Court to conclude that Congress did not intend such entities to be included.

Further, there is no statutory gap for federal common law to fill. Pension Benefit describes in great detail the similarities between withdrawal liability for multiemployer plans and termination liability for single-employer plans (Doc. 38 at 19–23), arguing these similarities justify extending the federal common law doctrine from the first context to the second. But the statutory provisions governing multiemployer plans do not define the contours of successor liability, creating a gap.

8

Single-employer plans, on the other hand, are subject to 29 U.S.C. § 1369(b).  The explicit language of that provision leaves no gap to fill.

Pension Benefit also argues that "ERISA provides that a nearly identical group of entities is liable for Withdrawal Liability [from multiemployer plans], and each of the several courts considering the issue has held that the Federal Successor Doctrine applies to Withdrawal Liability" (Doc. 38 at 31).  Pension Benefit suggests that declining to apply the federal common law to single-employer plans would be inconsistent and create an "awkward gap" in the common law (*id.* at 32).  Yet this argument ignores the many differences between single and multiemployer plans.  The very point of the MPPAA was to create special provisions for multiemployer plans and to treat them differently.  Further, Pension Benefit focuses on the wrong gap.  The question is not whether a gap will be left in the federal common law by declining to apply it, but whether there exists in the first place a statutory gap that requires the creation of federal common law.  *See DiGeronimo*, 763 F.3d at 511.  For the reasons explained above, this Court finds no statutory gap.

Finally, the creation of federal common law here is not essential to the promotion of fundamental ERISA policies.  *See Girl Scouts of Middle Tenn. v. Girls Scouts of the U.S.A.*, 770 F.3d 414, 420 (6th Cir. 2014).  "The principal object of [ERISA] is to protect plan participants and beneficiaries."  *Boggs v. Boggs*, 520 U.S. 833, 845 (1997).  As Congress has established several categories of persons and entities which may be pursued for contributions to underfunded single-employer pension plans, Pension Benefit has avenues of redress to protect the pensions of vested employees.  Adding more targets is not necessary to fulfill ERISA's policy of protecting plan participants.

Accordingly, this Court concludes that Count XV is not grounded in the statute or established federal common law.  Because this Court declines to create federal common law "to fill a gap" where none exists, Count XV is dismissed with prejudice.

### CONCLUSION

This Court grants the Motion to Dismiss Counts III and IX and the Motion to Dismiss Count XV.  This Court schedules a Phone Status on **Friday, January 6, 2017 at 9:30 AM** to discuss the remaining Counts with counsel for the non-settling parties.  At that time, counsel shall call the District Court conference line.

IT IS SO ORDERED.

　　　s/ *Jack Zouhary*　　　
JACK ZOUHARY
U. S. DISTRICT JUDGE

December 29, 2016

10